**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs, and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

LUIS ALBERTO HERNANDEZ,
*on behalf of himself, FLSA Collective Plaintiffs, and the Class*,

            Plaintiff,

v.

UNCLE VINNY'S ENTERPRISES INC.
    d/b/a UNCLE VINNY'S,
HUDSON VALLEY GREENS INC
    d/b/a UNCLE VINNY'S, and
VINCENT BONDI,

            Defendants.

Case No.:

**CLASS AND COLLECTIVE ACTION COMPLAINT**

Jury Trial Demanded

---

      Plaintiff LUIS ALBERTO HERNANDEZ ("Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants UNCLE VINNY'S ENTERPRISES INC. d/b/a UNCLE VINNY'S, HUDSON VALLEY GREENS INC d/b/a UNCLE VINNY'S ("Corporate Defendants"), and VINCENT BONDI ("Individual Defendant," and collectively with Corporate Defendants, "Defendants") and states as follows:

1

## INTRODUCTION

1. Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et. seq.* ("FLSA"), that he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to time shaving; (2) unpaid wages; (3) unpaid overtime premiums; (4) liquidated damages; and (5) attorneys' fees and costs.

2. Plaintiff also alleges, pursuant to the New York Labor Law ("NYLL"), that he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to time shaving; (2) unpaid wages; (3) unpaid overtime premiums; (4) unpaid spread of hours premiums; (5) liquidated damages; and (6) attorneys' fees and costs.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

4. Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391.

## PARTIES

5. Plaintiff LUIS ALBERTO HERNANDEZ is a resident of Bronx County.

6. Corporate Defendant UNCLE VINNY'S ENTERPRISES INC. d/b/a UNCLE VINNY'S is a domestic business corporation organized under the laws of the State of New York, with its principal place of business, and an address of service of process located at 641 TIMPSON PL, BRONX, NY, UNITED STATES, 10455. Corporate Defendant UNCLE VINNY'S ENTERPRISES INC. provides produce distribution services under the name UNCLE VINNY'S.

7. Corporate Defendant HUDSON VALLEY GREENS INC d/b/a UNCLE VINNY'S is a domestic business corporation organized under the laws of the State of New York, with its

2

principal place of business located at 641 TIMPSON PL, BRONX, NY, UNITED STATES, 10455 and an address of service of process located at 571A WHITE PLAINS RD, EASTCHESTER, NY, UNITED STATES, 10709. Corporate Defendant HUDSON VALLEY GREENS INC provides produce distribution services under the name UNCLE VINNY'S.

8. Defendants operate their produce distribution business as a single integrated enterprise under the trade name UNCLE VINNY'S. The owner and Chief Executive Officer for both Corporate Defendants is the same individual. The principal place of business of both Corporate Defendants is the same address. Plaintiff was paid by Corporate Defendant UNCLE VINNY'S ENTERPRISES INC. d/b/a UNCLE VINNY'S until around 2014, after which Plaintiff was paid by Corporate Defendant HUDSON VALLEY GREENS INC d/b/a UNCLE VINNY'S.

9. Individual Defendant VINCENT BONDI is the Chief Executive Officer and owner of Corporate Defendants and has operational control of Corporate Defendants. Individual Defendant VINCENT BONDI exercises the power to (and also delegate to managers and supervisors the power to: (i) fire and hire employees; (ii) supervise and control employee work schedules; (iii) determine the rate and method of pay; (iv) maintain employment records; and (v) otherwise affect the quality, terms and conditions of employment for Plaintiff, FLSA Collective Plaintiffs, and Class Members. At all relevant times, employees could complain to VINCENT BONDI regarding any of the terms of their employment, and VINCENT BONDI would have the authority to effect any changes to the quality and terms of their employment. Individual Defendant VINCENT BONDI has authority over all employee related decisions, including payroll, personnel, and wage and hour policies concerning Plaintiff, FLSA Collective Plaintiffs, and Class Members. VINCENT BONDI had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs, and Class Members and could reprimand employees.

10. At all relevant times, Corporate Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA, NYLL, and the regulations thereunder.

11. At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and Class Members were directly essential to the business operated by Defendants.

12. Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

## **FLSA COLLECTIVE ACTION ALLEGATIONS**

13. Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all current and former non-exempt employees, including, but not limited to packers, drivers, and delivery persons, among others, employed by Defendants on or after the date that is 6 years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

14. At all relevant times, Plaintiff and FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them their proper wages, including: (i) unpaid wages, including overtime, due to time shaving; (ii) unpaid wages; (iii) unpaid overtime premiums; (iv) liquidated damages; and (v) attorneys' fees and costs. The claims of Plaintiff stated herein are essentially the same as those of FLSA Collective Plaintiffs.

15. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action,

their names and addresses are readily available from Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

16. Plaintiff bring claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees including but not limited to packers, drivers, and delivery persons, among others, employed by Defendants on or after the date that is six (6) years before the filing of the Complaint in this case as defined herein (the "Class" or "Class Members").

17. The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the title of the position held, and rates of pay for each Class Members are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under FRCP 23.

18. The proposed Class is so numerous that a joinder of all Class Members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendants, there is no doubt that there are more than 40 Members of the Class.

19. Plaintiff's claims are typical of those claims that could be alleged by any Member of the Class, and the relief sought is typical of the relief, that would be sought by each Member of the Class in separate actions. All the Class Members were subject to the same corporate practices of Defendants of: (i) unpaid wages, including overtime, due to time shaving; (ii) unpaid overtime

premiums, due to compensation of overtime at a straight time rate; (iii) unpaid spread of hours premiums; (iv) failing to provide wage notices to Class Members, at the date of hiring and annually, per requirements of NYLL; and (v) failing to provide proper wage statements per requirements of NYLL.

21. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

22. Plaintiff is able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

23. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual Class Members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great

expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual Members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual Members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

24. Defendants and other employers throughout the state violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide Class Members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

25. There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members, including:

    a. Whether Defendants employed Plaintiff and the Class Members within the meaning of the NYLL;

    b. What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not properly pay Plaintiff and Class Members;

    c. At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and Class Members for their work;

    d.    Whether Defendants failed to compensate Plaintiff and Class Members for all hours worked;

    e.    Whether Defendants failed to compensate Plaintiff and Class Members for all hours, including overtime, worked due to time shaving;

    f.    Whether Defendants compensated Plaintiff and Class Members their proper overtime rate for all hours worked in excess of forty (40) each workweek under the NYLL;

    g.    Whether Defendants compensated Plaintiff and Class Members their spread of hour premiums for shifts lasting longer than ten (10) hours in duration under the NYLL;

    h.    Whether Defendants provided wage notice, at date of hiring and dates of all wage changes thereafter, to all non-exempt employees per requirements of the NYLL; and

    l)    Whether Defendants provided proper wage statements informing all non-exempt employees of information required to be provided on wage statements under the NYLL.

## STATEMENT OF FACTS

26.    In or around 2009, Plaintiff was hired by Defendants and/or their predecessors, as applicable, to work as a packer by Defendants at UNCLE VINNY'S located at 641 TIMPSON PL, BRONX, NY, UNITED STATES, 10455. As a packer, Plaintiff was required to pack produce boxes and get them ready for shipment. Plaintiff's employment was terminated in or around October 2023.

27.    From the beginning of his employment until in or around 2018, Plaintiff was told by Defendants that he would be compensated at the minimum hourly rate. During the relevant period until January 2023, Plaintiff was paid at an hourly rate of fifteen dollars and fifty cents

8

($15.50), per verbal agreement. From in or around January 2023 until the end of his employment, Plaintiff was paid at an hourly rate of sixteen dollars and fifty cents ($16.50), per verbal agreement.

28. However, Plaintiff was never provided a wage statement or wage notice that properly described his hourly rate. The wage statements provided by Defendants only showed the gross wage, missing the rate of pay and other information required by applicable laws and regulations. Consequently, Plaintiff had no alternative but to rely on the verbal representation by Defendants that he was, indeed, being compensated at these specified rates. FLSA Collective Plaintiffs and Class Members were compensated by Defendants at similar hourly rates verbally asserted by Defendants.

29. At all relevant times, Plaintiff was scheduled by Defendants to work five (5) days per week, 6:00 a.m. to 3:00 p.m. from Monday to Friday, with thirty (30) minutes breakfast break and forty-five (45) minutes lunch break. In total, Plaintiff was scheduled to work for thirty-eight point seventy five (38.75) hours per week.

30. At all relevant times, Plaintiff was consistently required by Defendants to stay beyond the end of his regular scheduled shift end time. Plaintiff recalls that as a result of Defendants' request, Plaintiff routinely worked extra two (2) to three (3) hours each shift, totaling forty-eight point seventy-five (48.75) to fifty-three point seventy-five (53.75) hours worked per week. FLSA Collective Plaintiffs and Class Members were scheduled to work similar hours and required by Defendants to work for extra hours.

31. At all relevant times, Defendants failed to pay Plaintiff for all hours worked. Plaintiff provides his paystubs spanning from 2018 to 2023, covering 158 pay periods. *See* **Exhibit A – Paystubs, Exhibit B – Paystubs Analysis**. Calculating the hours compensated by dividing the gross wage by the pay rate clearly reveals Defendants' failure to pay for all hours worked.

Among the 158 pay periods analyzed herein, Plaintiff was compensated for hours less than his scheduled hours (38.75) in 128 pay periods, even though Plaintiff worked full hours as scheduled every shift. FLSA Collective Plaintiffs and Class Members similarly worked their scheduled shifts but were not compensated fully for their worked hours.

32. At all relevant times, Plaintiff was time shaved by Defendants. Defendants required Plaintiff to work additional hours after the end of his scheduled shift end time every shift, but Plaintiff was not paid for worked hours outside his scheduled shift. As described previously, Plaintiff provides his paystubs and analysis of his paystubs, which clearly shows Plaintiff was not paid for all hours worked within his scheduled shift. Consequently, Plaintiff was not paid for all hours worked outside his scheduled shift. *See* **Exhibit A** and **Exhibit B**. FLSA Collective Plaintiffs and Class Members were similarly required to work in addition to their scheduled shifts and were not paid for all their hours worked due to Defendants' practice of timeshaving.

33. Throughout his employment, Plaintiff was never compensated by Defendants at the proper overtime rate for hours worked over forty (40) in a workweek. Even though Plaintiff was regularly working in excess of forty (40) hours per week, Defendants failed to compensate Plaintiff at the statutory overtime premium of one and a half. Similarly, FLSA Collective Plaintiffs and Class members were not paid at the statutory overtime premium of one and a half for hours worked in excess of forty (40) per week.

34. Throughout his employment, Plaintiff regularly worked shifts exceeding ten (10) hours in duration. However, he never received any spread of hours premium for working such shifts, as required under the NYLL. Similarly, Class Members regularly worked shifts exceeding ten (10) hours in duration but never never received any spread of hours premium for working such shifts.

35. Defendants knew that Plaintiff and Class Members regularly worked days exceeding ten (10) hours in duration, as Defendants were the ones to require such amounts of work per day. Therefore, Defendants knew that Plaintiff and Class Members should have been compensated spread of hours premiums for these workdays.

36. In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that clearly entails a concrete risk of harm to an interest identified by the New York State legislature. Defendants' failure to provide such notices trivializes the importance of these notices in protecting Plaintiff's interest in ensuring proper pay. Despite Defendants' conduct, there is a reason why the New York legislature concluded that enacting wage notice provisions would "far better protect workers' rights and interests" than existing penalties. *See* N.Y. Spons. Mem., 2010 S.B. 8380.

37. Written notices function as a means of apprising employees of their rights and of their employer's obligations towards them, empowering employees to advocate for themselves. Deprivation of such notices necessarily entails a significant risk of harm to the employees' concrete interest in being paid properly and timely.

38. Here, Defendants' failure goes beyond generating a risk of harm to Plaintiff and Class Members. Defendants' conduct actually harmed Plaintiff and Class Members by weakening their ability to contest the sufficiency of Defendants' wage payments to them.

39. For example, Plaintiff has alleged that he was never paid overtime compensation at the rate of not less than one and one-half times the regular rate of pay for each hour worked in excess of forty (40) hours in a workweek. However, the wage statements Defendants provided to Plaintiff never showed actual hours worked by Plaintiff, his rate of pay, or whether paid by the hour. Withholding *accurate* wage statements, therefore, allowed Defendants to misrepresent

themselves as having paid Plaintiff and other employees all wages due when Defendants had not, in fact, done that.

40. Had the wage statements accurately represented Plaintiff's actual hours, they would have revealed a clear, unambiguous, and indisputable discrepancy between the number of hours that Plaintiff worked and the number of hours for which he was paid—thus providing Plaintiff with incontrovertible proof of Defendants' FLSA and NYLL violations. Such proof would have permitted Plaintiff and other similarly wronged employees to readily prevail on a motion for summary judgment early in the litigation, without the need to conduct much discovery, since accurate wage statements would have effectively constituted a written admission by Defendants of their wrongdoing.

41. This legal leverage alone might well have incentivized Defendants to make Plaintiff and other employees whole—in order to avert what would be a hopelessly uphill litigation fight.

42. Regardless of what Defendants would have done with Plaintiff in possession of such leverage, Plaintiff has described what is a certainty of a harm, not a mere risk, because it is certain that incontrovertible documentary evidence of Defendants' wage violations would have placed Defendants in a far weaker legal position and Plaintiff in a far stronger one. Plaintiff has been concretely injured because Defendants' deceptive representations on Plaintiff's wage statements have prevented this outcome.

43. Of course, Defendants' WTPA violations could not prevent Plaintiff from bringing the instant action. But there is a substantial difference between prosecuting a lawsuit based on contestable testimony and doing so based on incontestable documentary evidence

provided by the defendant itself, which is what Defendants' WTPA violations deprived Plaintiff of.

44. Defendants may retort that accurate wage statements would not have placed them in a weaker position because the wage statements they did provide were, in fact, accurate. But that is an argument for another day, as the Court must accept Plaintiff's allegations as true at this stage of the litigation.

45. There is no question that Plaintiff would be in a far better position than he is now had he received compliant wage statements. At worst, Plaintiff would have the means to readily prevail on a summary judgment motion, simply on the basis of documentary evidence generated by Defendants themselves. At best, Plaintiff might have avoided litigation altogether, since the threat thereof might have incentivized Defendants to just make Plaintiff whole.

46. Because either of the foregoing outcomes would have been preferable to the status quo, Plaintiff and Class Members were concretely harmed when Defendants failed to provide them with the accurate wage statements that would have facilitated one of the preferred outcomes. The loss of an opportunity to readily prevail on a summary judgment motion with fairly little expenditure of resources is a concrete injury.

47. Due to Defendants' failure to provide legally mandated notices such as earning statements and wage notices, Defendants were able to deprive employees of evidence for Defendants' wrongdoing, which has significantly delayed the payment of all wages owed to Plaintiff and Class Members. This delayed payment caused Plaintiff and Class Members to struggle to timely pay for necessities, bills, and debts.

48. Defendants knowingly and willfully operated their business with a policy of not compensating Plaintiff, FLSA Collective Plaintiffs, and Class Members all wages owed for all

hours worked, including overtime, due to a policy of time shaving, in violation of the FLSA and the NYLL.

49. Defendants knowingly and willfully operated their business with a policy of not compensating Plaintiff, FLSA Collective Plaintiffs, and the Class at the proper overtime rate for all hours worked in excess of forty (40) hours in a workweek due to an improper straight time rate, in violation of the FLSA and the NYLL.

50. Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff and Class Members spread of hours premium for hours worked over ten (10) in a shift, in violation of the NYLL.

51. Defendants knowingly and willfully operated their business with a policy of not providing wage and hour notices to Plaintiff and Class Members, at the beginning of employment and annually thereafter, in violation of the NYLL.

52. Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements to all their employees as required under the NYLL.

53. Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and the Class in this litigation and have agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT

54. Plaintiff realleges and incorporates all the foregoing paragraphs as if fully set forth herein.

55. At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

56. At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

57. At all relevant times, Corporate Defendants had gross annual revenues in excess of $500,000.

58. At all relevant times, Defendants had a policy and practice of failing to pay Plaintiff and FLSA Collective Plaintiffs their wages for all hours worked due to time shaving, in violation of the FLSA.

59. At all relevant times, Defendants had a policy and practice of failing to pay Plaintiff and FLSA Collective Plaintiffs their overtime wages at the proper statutory rate of time-and-one-half for all hours worked in excess of forty (40) hours in a workweek, in violation of the FLSA.

60. Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

61. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs their proper wages, including their proper overtime premium, when Defendants knew or should have known such was due.

62. Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

63. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e. double) damages pursuant to the FLSA.

64. Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages, including overtime, due to time shaving; unpaid overtime premiums due to compensating employees at a straight time rate for overtime hours; unpaid overtime wages due to an invalid tip credit; illegally retained gratuities; plus an equal amount as liquidated damages.

65. Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW

66. Plaintiff realleges and incorporates all the foregoing paragraphs as if fully set forth herein.

67. At all relevant times, Plaintiff and Class Members were employed by Defendants within the meaning of the NYLL §§ 2 and 651.

68. Defendants knowingly and willfully failed to pay Plaintiff and Class Members all wages owed, including overtime, due to a policy of time shaving, in violation of the NYLL.

69. Defendants willfully violated the rights of Plaintiff and Class Members by failing to pay them overtime compensation at the rate of not less than one and one-half times the regular

rate of pay for each hour worked in excess of forty (40) hours in a workweek due to an improper hourly rate, in violation of the NYLL.

70. Defendants knowingly and willfully failed to pay Plaintiff and Class Members their spread of hours premiums for shifts lasting longer than ten (10) hours in duration, in violation of the NYLL.

71. Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and Class Members wage notice, at date of hiring and annually thereafter, as required under the NYLL.

72. Defendants knowingly and willfully failed to provide proper wage statements to Plaintiff and Class Members with every wage payment, as required under the NYLL, because the wage statements Defendants provided to Plaintiff and Class Members failed to show all hours worked by employees, rate of pay, and whether paid by the hour, due to Defendants' unlawful time shaving.

73. Due to the Defendants' NYLL violations, Plaintiff and Class Members are entitled to recover from Defendants unpaid wages; unpaid wages due to time shaving; unpaid overtime premiums; unpaid spread of hours premium; reasonable attorneys' fees; liquidated damages; statutory penalties and costs and disbursements of the action, pursuant to the NYLL.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of himself, FLSA Collective Plaintiffs, and Class Members, respectfully requests that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

b. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c. An award of unpaid wages, due under the FLSA and the NYLL;

d. An award of unpaid wages, due to time shaving, due under the FLSA and the NYLL;

e. An award of unpaid overtime wages, due under the FLSA and the NYLL;

f. An award of unpaid spread of hours premiums, due under the NYLL;

g. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages pursuant to 29 U.S.C. § 216;

h. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages pursuant to the NYLL;

i. An award of statutory penalties, prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

j. Designation of Plaintiff as the Representative of the FLSA Collective Plaintiffs;

k. Designation of this action as a class action pursuant to F.R.C.P. 23;

l. Designation of Plaintiff as Representative of the Class; and

m. Such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: January 5, 2024  Respectfully submitted,
       New York, New York  By: _/s/ C.K. Lee_
                                         C.K. Lee, Esq.

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*

19